**UNITED STATES v. CLASSIC et al.**

No. 20067.

District Court, E. D. Louisiana, New Orleans Division.

Oct. 9, 1940.

Rene A. Viosca, U. S. Atty., and J. Skelly Wright, Hilary J. Gaudin, and Robert Weinstein, Asst. U. S. Attys., all of New Orleans, La., for plaintiff.

Charles W. Kehl and Fernando J. Cuquet, Jr., both of New Orleans, La., for defendants.

CAILLOUET, District Judge.

There are six counts in the indictment returned by the grand jury, in the above-entitled and numbered case, against Patrick B. Classic, John A. Morris, Bernard W. Yeager, Jr., William Schumacher, and J. J. Fleddermann.

They have filed a demurrer to said indictment, and insofar as objection is urged to counts 1, 2, 3, and 4, the court sustains said demurrer on the ground that no provision of Sections 19 and 20 of the Criminal Code, 18 U.S.C.A. §§ 51 and 52, refers or has application to the state of facts detailed in said four counts.

The provisions of Section 51, depended upon by the Government as justifying the conspiracy charge covered by count 1, read: "If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same, * * *".

The count charges that there was a conspiracy "* * * * to injure, oppress, threaten and intimidate citizens in the free exercise and enjoyment of rights and privileges secured to them by the Constitution and laws of the United States" and that, at a primary election held on September 10th, 1940, in accordance with the provisions of Act No. 46 of the Regular Session of the Legislature of the State of Louisiana for the year 1940, for the purpose of selecting and nominating a candidate for the Democratic Party to run in the election for the office of Congressman in the Congress of the United States of America, to be held in the Second Congressional District of the State of Louisiana, on November 5th, 1940, in accordance with the provisions of the Constitution and laws of the United States and of the State of Louisiana, the defendants, then and there serving as Commissioners of Election, in accordance with said Act 46 of 1940, did, as part and purpose of said conspiracy "to injure, oppress, threaten and intimidate" citizens and registered voters who cast their ballots in said primary election, at the second precinct of the eleventh ward of the City of New Orleans, in said Second Congressional District, as well as two of the three candidates for the nomination as Democratic candidate for the office of Congressman from said District, to be voted on at the General Election of November 5, 1940, change and alter ballots cast for said two candidates to read in favor of the third and successful candidate, and did so mark and report the same, thereby depriving the voters, who had so cast their ballots in favor of either of his two opponents, of the free exercise and enjoyment of their rights and privileges secured to them by the Constitution and laws of the United States, in this wise, to-wit: "their rights and privileges to vote and to have their votes counted as cast for the candidate of their choice in said election"; and, furthermore, thereby depriving each of the first-mentioned two candidates of their own rights and privileges secured to them by such Constitution and laws, i. e., "by preventing each of them from being legally and properly nominated as a candidate for said office" and by not having counted for them, as cast, all of the votes actually cast for each in said primary election. The count specifically alleging that "in the Second Congressional District of Louisiana nomination as the candidate of the Democratic party is and has always been equivalent and tantamount to election, and that, without exception, since the adoption of the first primary election law by the State of Louisiana in the year 1900, the Democratic nominee for the office of Congressman from the Second Congressional District of Louisiana has been elected".

Section 52, 18 U.S.C.A., provides in part, as follows: "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects, or causes to be subjected, any inhabitant of any State, Territory, or District to the deprivation of any

rights, privileges, or immunities secured or protected by the Constitution and laws of the United States, * * * shall be fined," etc.

The foregoing is depended upon by the Government as justifying the charges covered by counts 2, 3, and 4 to the effect, respectively, that the defendants did "unlawfully, wilfully, knowingly and feloniously subject and cause to be subjected" not only registered voters of the 2nd precinct of the eleventh ward of the City of New Orleans, in the Second Congressional District of the State of Louisiana, but the two unsuccessful candidates, at said Democratic primary election of September 10, 1940,. for the Democratic nomination as Candidate for the office of Congressman at the general election to be held on November 5, 1940, "to the deprivation of rights, privileges and immunities secured and protected by the Constitution and laws of the United States"; such voters having been deprived, it is alleged, of "their right to cast their votes for the candidates of their choice, and to have their votes counted for such candidate as cast in the Democratic primary election of September 10, 1940", and each of said two unsuccessful candidates, having been deprived of his "rights", privileges and immunities

"(1) to offer himself as a candidate for the office of Congressman in the Congress of the United States for the Second Congressional District of Louisiana;

"(2) to be legally and properly nominated as a candidate for the office of Congressman in the Congress of the United States from the Second Congressional District of Louisiana; and

"(3) to have counted for him all votes legally cast for him for said nomination for said office".

■ As was held in Newberry et al. v. United States, 1921, 256 U.S. 232, 41 S.Ct. 469, 474, 65 L.Ed. 913, and in prior cases cited by the majority opinion, the source of Congressional power over elections for United States Senators and Representatives is found in Section 4, Article 1, of the Federal Constitution reading as follows: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of choosing Senators."

But the "elections" therein referred to are "general" elections and not "primary" elections, which are not final and of themselves do not "elect" anyone to serve either in the Senate or House of Representatives; no power to control party primary elections, such as the Democratic primary election of September 10th, 1940, was ever intended at the time that the Constitution was adopted; "primary" elections for the nominating of candidates for the offices of either Senator or member of the House of Representatives were not even within the orbit of the Convention's deliberations on the subject of representation in the National Congress, as "primaries" were then unknown; and, as Justice McReynolds pertinently observed in the court's majority opinion, the history of that time indicates "beyond reasonable doubt" that, if the makers of the Constitution had contended for a construction of Section 4 of Article 1 that included and affected a state's legally prescribed medium for the nomination of party candidates seeking to be "elected" to either the Senate or the House of Representatives, this would not have been ratified by the State Conventions.

Under the Newberry Case, it must here be said, as was then by the organ of the court, viz: "We can not conclude that authority to control party primaries or conventions for designating candidates was bestowed on Congress by the grant of power to regulate the manner of holding elections."

The "free exercise or enjoyment" of the right or privilege of participating in the primary election of September 10, 1940, either as voter, or candidate for the Democratic nomination for the office of Congressman, to be voted on at the general election on November 5, 1940, was not "secured", nor "secured and protected", to voter or candidate "by the Constitution or laws of the United States", although the four counts here in question so read.

■ The provisions of Sections 51 and 52, 18 U.S.C.A., so depended upon by the Government to support counts 1, and 2, 3, and 4, respectively, of the indictment levelled against the five defendants, could only be made applicable (if these provisions were otherwise susceptible of legal application) to the facts charged as having only come into being in connection with a party primary election held on September 10, 1940, "by stretching old statutes to new uses, to which they are not adapted and for

which they were not intended", to use the expression of the Supreme Court, in the case of United States v. Gradwell, etc., 1917, 243 U.S. 476, 37 S.Ct. 407, 412, 61 L.Ed. 857.

Clearly these statutory provisions of 1870 have no application here.

Under both of the foregoing constructions—that of Section 4 of Article 1 of the United States Constitution, as well as that of Sections 19 and 20 of the Criminal Code, 18 U.S.C.A. §§ 51 and 52,—the demurrer filed must be, and is, sustained insofar as it relates to the first four of the six counts of the indictment, and the said four counts are hereby dismissed.